UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

SUSAN ILENE ROSENBAUM,

           Plaintiff,

                                    **Hon. Hugh B. Scott**

           v.                                     11CV890A

                                         **Report**
                                         **and**
MICHAEL J. ASTRUE, Commissioner of      **Recommendation**
Social Security,

           Defendant.

Before the Court are the parties' respective motions for judgment on the pleadings (Docket Nos. 12 (defendant), 10 (plaintiff's memorandum, deemed to be a motion)).

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security that plaintiff is not disabled and, therefore, is not entitled to disability insurance benefits and/or Supplemental Security Income benefits.

## PROCEDURAL BACKGROUND

The plaintiff, Susan Ilene Rosenbaum ("Rosenbaum" or "plaintiff"), filed an application for disability insurance benefits on October 7, 2009. That application was denied initially and on reconsideration. The plaintiff appeared before Administrative Law Judge ("ALJ") Bruce Mazzarrella, who considered the case de novo and concluded, in a written decision dated May 16, 2011, that the plaintiff was not disabled within the meaning of the Social Security Act.

The ALJ's decision became the final decision of the Commissioner on August 31, 2011, when the Appeals Council denied plaintiff's request for review.

Plaintiff commenced this action on October 24, 2011 (Docket No. 1). The parties moved for judgment on the pleadings (Docket No. 12; see Docket No. 10). The motions were deemed submitted (Docket No. 14) on October 4, 2012 (Docket No. 16; cf. Docket Nos. 8, 15).

**FACTUAL BACKGROUND**[1]

Plaintiff was born on July 22, 1959, and was 48 years old as of the claimed onset date, making her a younger individual under the Social Security regulations (R. 19). She had not engaged in substantial gainful activity since May 1, 2008, the onset date (R. 13). Her past relevant work was in sales working for a medical corporation and the Better Business Bureau (R. 34-36). At the Better Business Bureau, plaintiff contacted business owners by telephone to encourage them to join the Bureau (R. 36). Plaintiff has a GED and attended one year of college (R. 41).

Plaintiff lives alone and does not drive; she isolates herself and spends her time watching television or attending therapy (R. 34, 56). Plaintiff does her own meal preparation, has assistance doing her laundry and grocery shopping (R. 57-58). When asked if she could work, for example, cleaning hotel rooms, plaintiff stated that she would get overwhelmed with having to be at work on time, being consistent, and cleaning effectively (R 59).

---

[1] References noted as "(R.__)" are to the certified record of the administrative proceedings.

2

## MEDICAL AND VOCATIONAL EVIDENCE

Plaintiff has severe impairments for depression and anxiety (R. 13). Because of her condition, her last employer, the Better Business Bureau, allowed her to work from home (R. 36), waking at 11 am to start work. Plaintiff claims that even with this accommodation, plaintiff was not productive due to her illness (R. 37). While working for the Better Business Bureau, plaintiff missed a great deal of time (Docket No. 10, Pl. Memo. at 4). She might come in late once or twice a week, leave for therapy sessions, or leave early because she became overwhelmed (R. 60, 62). When she worked from home, there were months she did not make money since she worked on commission and had made one or two calls a month (R. 62).

Plaintiff testified that she had a long history of anxiety, panic disorder, and depression, describing her symptoms as feeling racy, fearful, and overwhelmed (R. 44). She felt that she did not want to go anywhere, felt scared (id.) and that her condition worsened since 2009 (id.). She had been treated for mental impairments, more recently at Lakeshore Behavioral Health since December 2010 (R. 46). Before that, plaintiff was treated at Jewish Family Services (id.). At her hearing, plaintiff stated that she saw a psychiatrist once every two weeks, a therapist once a week, and attended group counseling sessions twice a week (R. 18-45). At that time, plaintiff was taking Ambien for sleep, Xanax for anxiety, and Lomactal for mood swing disorder and depression (R. 46-47); before she took Celexa, but that drug was not helping (R. 46). Plaintiff complains of nightmares that Ambien did not help (R. 49).

Plaintiff testified that she lays down on an average of over half the day (R. 64). She states having trouble concentrating which affects her ability to read (R. 66). She has a bad day on

approximately four days a week when she would stay in bed or on the couch, avoid contact with the outside world, and she just wanted to be left alone (R. 67).

The ALJ posed three hypotheticals to vocational expert James Phillips (R. 71). The first hypothetical limited the individual to simple repetitive and routine tasks in a low contact, low stress work environment. Phillips concluded that this hypothetical claimant could not perform plaintiff's past work because her past work was not simple and involved contact with the public (R. 75). He concluded that this hypothetical claimant could perform work such as a line packer, light/unskilled work with 800 jobs in plaintiff's regional economy, and fruit cutter, also light/unskilled work with 390 jobs in this area (R. 20, 75-76). With the second hypothetical, the individual had a marked limitation in maintaining attendance and an ordinary work schedule; Phillips concluded that this individual would eventually lose those jobs (R. 76). The ALJ then proposed a third hypothetical adding that this individual had marked limitation in concentration, persistence, and pace. Phillips then concluded that with a lack of concentration, the hypothetical claimant would not be effective or safe in any job (R. 77).

The ALJ then found that plaintiff was unable to perform her past relevant work (R. 19). The ALJ concluded, however, that plaintiff has the residual functional capacity to perform work at all exertional levels but with nonexertional limitations that she perform only simple, repetitive, and routine tasks in a low contact, low stress work environment (R. 15-19). Emphasizing the daily activities she could do at home (R. 15), the ALJ found that her activities of daily living were not significantly affected by depression or anxiety (R. 14, 18). The state agency review psychologist, T. Andrews, found that plaintiff had mild restrictions of activities of daily living, moderate difficulties in maintaining social functioning, mild difficulties maintaining

4

concentration, persistence, and pace (R. 18, 393). The ALJ did not find credible plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms as they were inconsistent with the residual functional capacity assessment (R. 18). Thus, the ALJ concluded that the first hypothetical suited plaintiff's situation, and adopted the vocational expert's opinion as to the occupations still viable for plaintiff in that situation (R. 19-20).

**DISCUSSION**

The only issue to be determined by this Court is whether the ALJ's decision that the plaintiff was not under a disability is supported by substantial evidence. See 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229 (1938)).

*Standard*

For purposes of both Social Security Insurance and disability insurance benefits, a person is disabled when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience,

engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The plaintiff bears the initial burden of showing that her impairment prevents her from returning to her previous type of employment. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." Id.; see also Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

In order to determine whether the plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

> (1) whether the plaintiff is currently working;
>
> (2) whether the plaintiff suffers from a severe impairment;
>
> (3) whether the impairment is listed in Appendix 1 of the relevant regulations;
>
> (4) whether the impairment prevents the plaintiff from continuing her past relevant work; and
>
> (5) whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; Berry, supra, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992). However, it should be noted that the ALJ has an affirmative duty to fully develop the record. Gold v. Secretary, 463 F.2d 38, 43 (2d Cir. 1972).

In order to determine whether an admitted impairment prevents a claimant from performing her past work, the ALJ is required to review the plaintiff's residual functional capacity and the physical and mental demands of the work she has done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). When the plaintiff's impairment is a mental one, special "care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g. speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work." See Social Security Ruling 82-62 (1982); Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir. 1994). The ALJ must then determine the individual's ability to return to her past relevant work given her residual functional capacity. Id.

For major depression under 20 C.F.R. Part 404, Subpt. P, App. 1, §§ 12.04, 12.06, pertinent to this case, one set of requirements for a recognized disability is that to be severe, the depression or anxiety had to "result[] in at least two of the following: (1) marked restriction of activities of daily living; or (2) marked difficulties in maintaining social functioning; or (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration."

*Application*

In the instant case, plaintiff argues that the ALJ's denial decision was not supported by substantial evidence (Docket No. 10, Pl. Memo. at 9-14). Plaintiff contends that she met at least two indications of the severity of her depression and anxiety under 20 C.F.R. Part 404, Subpt. P, App. 1, §§ 12.04, 12.06. She claims marked restrictions in her daily activity, marked difficulties in maintaining social functioning, and marked difficulties in maintaining concentration,

7

persistence, or pace (Docket No. 10, Pl. Memo. at 10-11). She further argues that the ALJ erred in rejecting vocational expert's answers to two hypotheticals about potential other jobs (limit on ordinary work schedule, could not perform simple repetitive tasks) based upon her marked difficulties not recognized by the ALJ (Docket No. 10, Pl. Memo. at 11-14; see R. 76-77).

The ALJ adopted the vocational expert's response to the first hypothetical, that plaintiff could work as a line packer or fruit cutter, but found that the expert's second and third hypotheticals (which added conditions--maintaining a work schedule; limitations in concentration, persistence, and pace--that excluded all work) did not apply to plaintiff. The ALJ disregarded the opinions as to the latter hypotheticals based upon the opinion of the state agency review psychologist that plaintiff was (at worst) only moderately limited in those areas highlighted in the second and third hypotheticals. The only evidence supporting these marked limitations were plaintiff's testimony, which the ALJ found to be incredible.

Review of the record before the ALJ indicates that the therapists plaintiff sought treatment from, in particular Jewish Family Services and by Dr. Mohammed Hussain, found that she had mild or moderate limitations in her daily activities, and social interaction (R. 340, 342, 346). Dr. Hussain, on September 22, 2009, found that plaintiff had no major depressive disorder (R. 346). On November 16, 2009, in another evaluation, Dr. Hussain found that plaintiff appeared at her appointment "with a long list of symptoms, but her presentation does not match her symptomalogy" (R. 428). In a consultative psychiatric examination by Dr. Kevin Duffy (conducted in December 2009), plaintiff was found to be able to maintain concentration and attention, maintain a regular schedule, relate adequately with others, and deal appropriately with stress (R. 377). On this record, the ALJ could find plaintiff's presentation of her condition to be

8

exaggerated and reject it. Therefore, the first hypothetical to the vocational expert reflected plaintiff's situation (rather than the scenarios posed in the second or third hypotheticals) and the expert opined that there were occupations the first hypothetical claimant could perform.

Plaintiff's motion for judgment on the pleadings seeking remand to the Commissioner (Docket No. 10), therefore, should be **denied** and defendant's motion for judgment on the pleadings seeking a contrary result (Docket No. 12) should be **granted**.

## CONCLUSION

For the foregoing reasons, this Court recommends that the decision of the Commissioner be **AFFIRMED**. Defendant's motion for judgment on the pleadings (Docket No. 12) should be **granted** and plaintiff's motion for similar relief in her favor (see Docket No. 10) should be **denied**.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy to the Report & Recommendation to all parties.

**Any objections to this Report & Recommendation *must* be filed with the Clerk of this Court *within fourteen (14) days* after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) (effective Dec. 1, 2009) and W.D.N.Y. Local Civil Rule 72.3(a). <u>Failure to file objections to this report & recommendation within the specified time or to request an extension of such time waives the right to appeal any subsequent district court's order adopting the</u>**

**recommendations contained herein.**  Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance.  See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

So Ordered.

*/s/ Hugh B. Scott*
Hon. Hugh B. Scott
United States Magistrate Judge

Buffalo, New York
February 14, 2013